Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| WILLIAM RODRÍGUEZ CASTRO, et al<br><br>Recurrido<br><br>v.<br><br>MOROVIS COMMUNITY HEALTH CENTER, INC.<br><br>Peticionario | TA2026CE00310 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Civil núm.: AR2022CV02025<br><br>Sobre: Despido Injustificado y otros |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de marzo de 2026.

En un procedimiento sumario en el ámbito laboral, el Tribunal de Primera Instancia ("TPI") denegó una moción de sentencia sumaria presentada por el patrono. Según se explica a continuación, hemos determinado, en el ejercicio de nuestra discreción, no intervenir con lo actuado por el TPI, pues no está presente aquí el tipo de situación extrema que justifique que nos apartemos de la norma general de no revisar determinaciones interlocutorias en este tipo de caso.

I.

La acción de referencia (la "Demanda"), por despido injustificado y otras, se presentó en noviembre de 2022 por el Sr. William Rodríguez Castro (el "Empleado") en contra de Morovis Community Health Center, Inc. (el "Patrono"). Ello bajo el procedimiento sumario dispuesto por la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA Sec. 3118 ("Ley 2").

El Empleado alegó que, desde el 2012 hasta finales de 2021 (salvo una breve interrupción de un mes y medio), se desempeñó

como Director Ejecutivo del negocio del Patrono.  Reclamó el pago de la mesada correspondiente bajo la Ley 80 de 30 de mayo de 1976, 29 LPRA sec. 185 ("Ley 80").  Además, señaló que fue despedido en represalia por haber "participado … de varias actividades protegidas por la Ley Núm. 115 …".  También alegó que su despido obedeció a discrimen por edad y condición social.

El Patrono contestó la Demanda; planteó que hubo justa causa para el despido del Empleado.  Específicamente, alegó que el despido fue justificado a la luz de los hallazgos de una investigación, realizada por un "comité *ad hoc*", a los efectos de que el Empleado creó un "ambiente laboral hostil" y cometió "innumerables violaciones … en el desempeño de sus funciones."

En julio de 2024, el Patrono presentó una "Solicitud de Sentencia Sumaria" (la "Moción").  Planteó que era incontrovertido que el Empleado había incurrido en "hostigamiento laboral", "falta de respeto para con los empleados[,] supervisores" y pacientes, "decisiones de aumentos de sueldos arbitrarios, discriminatorios, ilícitos e injustos", "incumplimiento con los deberes de su puesto", "inobservancia con los deberes hacia la Junta de Directores", "incumplimiento con directrices de la Junta de Directores", "actitud y conducta irrespetuosa para con miembros de la Junta", "negligencia en la supervisión de empleados", "negligencia en la supervisión de trabajos de contratista independiente", "incumplimiento con las normas institucionales" y "violación [del] deber de fiducia".

Oportunamente, el Empleado se opuso a la Moción.  Enfatizó que había sido evaluado de forma excelente durante cada uno de los años entre el 2012 y el 2020, lo cual resultaba incompatible con la larga lista de conducta inapropiada y negligente a la cual alude el Patrono en justificación del despido.  Sostuvo que su despido fue en represalia por su postura, comunicada a la Junta de Directores, en

torno a varios asuntos relacionados con el "pago de retroactivo de dieta y millaje" a "los miembros de la Junta de Directores", la otorgación de una subasta de servicios de recursos humanos, la naturaleza del trabajo a tiempo parcial de una integrante de la Junta, la retención de ciertos servicios legales, la presencia de un asesor legal de la Junta en ciertas reuniones así como el monto de la "iguala" de este, la exigencia de dicho asesor de que el Empleado firmase documentos sin antes leerlos, la entrega de minutas de las reuniones de la Junta y la creación por la Junta de "plazas no existentes … para favorecer a miembros de la comunidad política o familiares." Según el Empleado, todo ello "provocó gran malestar" en el Presidente de la Junta de Directores, así como en el asesor legal (Lcdo. Víctor Rivera Torres), por lo cual estos determinaron despedirlo sin justa causa. Según el Empleado, estos "iniciaron una 'cacería de brujas'" con el fin de "buscar 'pruebas' de alegadas violaciones por parte de este en el ejercicio de sus funciones...". Planteó que, en todo caso, muchos de los asuntos a los cuales hace referencia el Patrono surgieron como resultado de las fallas de otros funcionarios del Patrono.

Mediante una Resolución notificada el 3 de marzo de 2026, el TPI denegó la Moción.

El 12 de marzo, el Patrono presentó el recurso que nos ocupa. Arguye que, ante el TPI, el Empleado no controvirtió adecuadamente los múltiples hechos propuestos y fundamentados en justificación del despido en controversia. Arguyó que el Patrono podía válidamente despedir al Empleado por razones distintas a las que motivaron su investigación inicial, si en el curso de esta surgían hechos que justificasen dicho curso de acción. También planteó que el TPI debía conceder deferencia al resultado de la investigación del Patrono y que no tenía pertinencia que el Empleado no fuese entrevistado como parte de la misma. Disponemos.

II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al v. BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Diaz de León,* 176 DPR 913, 917 (2009); *García v Padró,* 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v Torres Ghigliotty,* 175 DPR 83, 98 (2008)*; Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

La denegación de una petición de expedición del auto de *certiorari* no impide a la parte afectada reproducir su planteamiento en apelación. *Torres Martínez, supra.*

III.

En el ejercicio de nuestra discreción, hemos determinado declinar la invitación del Patrono a intervenir con lo actuado por el TPI.

En el contexto de un proceso sumario bajo la Ley 2, *supra*, **la regla general, con limitadísimas excepciones, es la no revisión de dictámenes interlocutorios por este Tribunal**. Véase, por ejemplo, *Medina Nazario v. McNeil Healthcare,* 194 DPR 723, 733 (2016) ("la revisión de resoluciones interlocutorias es contraria al carácter sumario de procedimiento laboral", por lo cual no se admite salvo en "casos extremos"); *Dávila, Rivera v Antilles Shipping,* 147 DPR 483, 494-98 (1999).

En efecto, "la revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento" y, así, este Tribunal "debe abstenerse de revisar dichas resoluciones". *Dávila,* 147 DPR a las págs. 496 y 497. Esta norma general solamente admite excepción cuando el TPI ha actuado sin jurisdicción o "en casos extremos en que la revisión inmediata, en esa etapa, disponga del caso... en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una grave injusticia". *Dávila,* 147 DPR a la pág. 498 (énfasis suplido).

En este caso, luego de considerar los factores de la Regla 40, *supra*, particularmente a la luz de la norma general de no revisión de dictámenes interlocutorios en casos que se conducen sumariamente bajo la Ley 2, *supra*, hemos concluido que debemos denegar el auto solicitado. Aunque de los hechos propuestos por el Patrono en la Moción podría razonablemente inferirse que el Empleado fue despedido por justa causa, la realidad es que, esos

mismos hechos, unidos a otros sobre los cuales tampoco hay controversia[1], podrían igualmente llevar a la conclusión de que el despido <u>no</u> obedeció a ninguna de las razones expuestas por el Patrono y que, en realidad, dicha determinación obedeció a otras diferencias entre el Empleado, por un lado, y la Junta y uno de sus asesores legales, por el otro. En estas circunstancias, es razonable la conclusión del TPI a los efectos de que es necesario un juicio para dilucidar si hubo justa causa para el despido.

En fin, no surge del récord que lo actuado por el TPI genere un "fracaso a la justica"; ni siquiera surge que la decisión recurrida sea claramente errónea, de tal modo que estemos ante una situación extrema que amerite nuestra intervención. Véase Regla 40(A) y 40 (G) de nuestro Reglamento, *supra; Dávila, supra; Medina Nazario, supra.*

IV.

Por los fundamentos antes expuestos, se deniega el auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[1] Por ejemplo: las circunstancias que rodearon la presentación de la queja que dio pie a la "investigación" realizada por el Patrono; la duración de dicha investigación y la naturaleza y número de sus "hallazgos", particularmente en comparación con la naturaleza de la referida queja; la ausencia de entrevista al Empleado durante la investigación; y el récord de evaluaciones satisfactorias al Empleado.